Sompo Japan Ins. Inc. v. Deloitte & Touche, 2005 NCBC 2

NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
03 CVS 5547

| | |
|---|---|
| SOMPO JAPAN INSURANCE INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| DELOITTE & TOUCHE, LLP, | ) ) |
| Defendant. | ) |

ORDER

{1}    This case is before the Court on the motion of plaintiff, Sompo Japan Insurance Inc. ("Sompo"), to amend its complaint to assert a cause of action for aiding and abetting fraud.  The proposed amended complaint contains a cause of action for fraud.  For the reasons set forth below, the Court denies the motion to amend to assert a cause of action for aiding and abetting fraud.

*Smith Moore LLP by Alan W. Duncan and Allison O. Van Laningham; Cadwalader, Wickersham & Taft, LLP by Michael G. Dolan, Howard R. Hawkins, Jr., Philip J. Loree, Jr. and Clifford H. Schoenberg, for Plaintiff Sompo Japan Insurance Inc.*

*Kilpatrick Stockton LLP by Susan H. Boyles, Daniel R. Taylor, Jr. and E. Danielle Thompson Williams; Skadden, Arps, Slate, Meagher & Flom LLP by Robert S. Bennett, Mitchell S. Ettinger, John L. Gardiner, Christopher P. Malloy and Edward J. Yodowitz; Bartlit Beck Herman Palenchar & Scott LLP by Philip S. Beck, James B. Heaton, III and Tarek Ismail, for Defendant Deloitte & Touche LLP.*

I.

{2}    This cause of action is brought by Sompo, a Japanese insurance and reinsurance company that participated in a reinsurance pool known as the Fortress Re insurance pool, against Deloitte & Touche LLP ("Deloitte"), one of the largest accounting firms in the United States.  Sompo asserts claims arising out of Deloitte's role as an independent auditor of financial statements of the Fortress Re insurance pool managed by Sompo's former pool agent, Fortress Re, Inc. ("Fortress Re").  In the complaint filed on April 16, 2003, Sompo seeks monetary relief and asserts claims for negligent misrepresentation, aiding and abetting Fortress Re's breach of its fiduciary duties, fraud, and unfair or deceptive acts or practices in violation of N.C.G.S. §§ 75-1.1, *et seq.* and § 58-63-15(5).

{3}    On December 30, 2004, Sompo filed a motion for leave to file an amended complaint.  In its motion, Sompo seeks to file an amended complaint "to make editorial changes, to refine certain factual allegations and to expand its Aiding and Abetting claim" to include a claim for aiding and abetting fraud. (Pl.'s Mot. Amend at 1; *see also* Pl.'s Ex. A to Mot. Amend at 50-53.)

{4}     The parties disagree with respect to the adoption of Section 876(b) of the Restatement (Second) of Torts (1979) by the North Carolina appellate courts.[1]  This Court concludes that: (1) the North Carolina appellate courts have not adopted and will not adopt Section 876 on a wholesale basis; (2) the North Carolina courts will adopt portions of Section 876 on a case-specific basis, guided by the "concert of action" involved; and (3) the result of that approach would be to reject application of the Section to aiding and abetting fraud because such a claim would be duplicative and redundant.  The latter conclusion is based upon this Court's belief that an aiding and abetting fraud claim would include an element of intent to defraud, making it indistinguishable from fraud for purposes of this case.

{5}     The Court starts with the general proposition that the Restatement of Torts is not the law in North Carolina unless a specific section has been adopted.  *See Cassell v. Collins*, 344 N.C. 160, 472 S.E.2d 770 (1996); *Marcus Bros. Textiles, Inc. v. PriceWaterhouse LLP* , 350 N.C. 214, 513 S.E.2d 171 (1999) (Mitchell, C.J. dissenting); *Hedrick v. Raines*, 344 N.C. 729, 477 S.E.2d 171 (1996).

{6}     There are no North Carolina appellate court decisions directly recognizing a cause of action for aiding and abetting fraud.  Plaintiff relies upon the decision of the North Carolina Court of Appeals in *Stetser v. TAP Pharmaceutical Products, Inc.*, 165 N.C. App. 1, 598 S.E.2d 570 (2004).

{7}     In *Stetser*, the trial court certified a national class in a class action alleging a collusive scheme between drug manufacturers and others which inflated the price of a prescription drug over a ten-year period.  The North Carolina Court of Appeals granted the petition for writ of certiorari pursuant to Rule 21 due to the "significant impact of the lawsuit, the importance of the issues involved and the need for efficient administration of justice."  *Id.* at 12, 598 S.E.2d at 578-79.

{8}     The Court of Appeals reversed the trial court's certification of the national plaintiff class.   The *Stetser* court held that the trial court erred in applying North Carolina law to all of the plaintiffs' claims.  The Court of Appeals then discussed the issue of conflict of laws and advised that the "substantive law of the state where the injury occurred would be applied to the plaintiffs' claims for common law fraud, civil conspiracy and tortious concert of action."  *Id.* at 16, 598 S.E.2d at 581.  The court further stated that the trial court's application of North Carolina law to these claims would only have passed constitutional muster if the substantive law of each of the fifty states did not materially differ from North Carolina law. *Id.* at 16-17, 598 S.E.2d at 581.  The court then discussed each claim and how the laws applicable to these claims in other states sometimes differ from the applicable law in North Carolina.  When discussing the "tortious action in concert" or "aiding and abetting" claim, the court quoted Section 876 of the Restatement (Second) of Torts.  *Id.* at 19-20, 598 S.E.2d at 583.  Directly following this quote, the court stated "Our Supreme Court has adopted this section of the Restatement as it is applied to the negligence of joint tortfeasors [citing *Boykin v. Bennett*, 253 N.C. 725, 118 S.E.2d 12 (1961), *McMillan v. Mahoney*, 99 N.C. App. 448, 393 S.E.2d 298 (1990) and *Blow v. Shaughnessy*, 88 N.C. App. 484, 364 S.E.2d 444 (1988)].  Several states have not adopted the Restatement's definition of action in concert as it is outlined in [Section] 876 [citing plaintiffs' exhibit]."  *Id.* at 20, 598 S.E.2d at 583.  This discussion by the *Stetser* court illustrated the process by which the trial court should consider the issue of conflict of laws upon remand.  Plaintiff argues that during this discussion the "Court of Appeals had every opportunity to disavow a cause of action for aiding and abetting common law fraud [and] [] did not."  (Pls.' Combined Mem. Re Aiding and Abetting Fraud at 6.)  However, the Court of Appeals did not undertake to determine if a cause of action for aiding and abetting fraud would be recognized in North Carolina.  It remanded to

the trial court to make appropriate determinations as to the law to be applied in all states, including North Carolina.

{9}     Furthermore, plaintiff cites this statement in *Stetser* as proof of North Carolina courts' adoption of the entirety of Section 876 as the "analytical framework for all aiding and abetting claims."  (Pls.' Combined Mem. Re Aiding and Abetting Fraud at 3.)  *Stetser* neither recognizes all aiding and abetting claims nor specifically recognizes a claim for aiding and abetting fraud.  This statement by the Court of Appeals does not apply wholesale to any claims outside of its application in *Boykin*, *McMillan*, and *Blow*. However, it is instructive with respect to the analytical framework.  It does focus clearly on an examination of "acting in concert."

{10}    Acting in concert means acting together.  As a noun, concert means an agreement in design or plan, a union formed by mutual communication of opinion and views.  *Merriam-Webster Online Dictionary*, *at* http://www.m-w.com/cgi-bin/dictionary.  As a verb, it means to participate or assist in a joint effort to accomplish an end.  *Id.*  *Boykin* and *McMillan* fit precisely this concept of acting in concert in which the concerted action results in injury.  Equal culpability led to equal liability.  There existed dual fault in those cases.  *Blow* presents an unusual situation in that the decision to apply aiding and abetting to state securities fraud rested upon federal securities law decisions doing precisely the same thing.  Shortly after the decision in *Blow*, its federal underpinnings were removed by the United States Supreme Court in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.* , 511 U.S. 164 (1994), which held that there was not a cause of action for aiding and abetting under federal securities laws.  The decision in *Blow* did make it clear that there could be no aiding and abetting breach of duty without knowledge on the part of the abettor of the underlying fraud of the person to whom assistance was provided.  In this case, in order to establish a claim for aiding and abetting fraud, plaintiff would be required to prove that Deloitte intentionally furnished fraudulent financial statements to Fortress Re and Carolina Reinsurance, Ltd. knowing that those false statements were being used by the Fortress Re-related parties to defraud plaintiff.  This Court cannot distinguish that claim from a direct fraud claim.  There must be direct knowledge and intent to defraud.  If that is required, the claims are redundant.  Why would it be prudent to engraft the requirements of knowledge and intent on an aiding and abetting fraud claim under these circumstances?  Unintended consequences will result from the elimination of those requirements.  If professionals such as accountants and lawyers could be held liable for fraud when their clients used their services to defraud a third party without the professionals' intent to participate in the fraud, the costs of such services would be prohibitive to all but the affluent.  Such professionals would either have to incur the expense of investigation into how their services were being used or be placed in the position of insurers of their clients' honesty.  Either burden would add an unacceptable cost to the provision of necessary and desirable services.  Also, it seems illogical to impose liability for aiding and abetting fraud based upon a lower level of scienter than fraud itself.  Nor would it be consistent with the cases in which the North Carolina courts have based joint liability on comparable culpability.  Without knowledge and similar intent, there can be no joint effort or concert in action.

{11}    If, as plaintiff alleges in its fraud claim, Deloitte acted with knowledge and intent to defraud plaintiff, the proof requirements would be the same as they would be for aiding and abetting fraud. Submission of both a fraud and an aiding and abetting fraud claim with the same burden of proof would be duplicative and confusing to a jury.  It would create the possibility of conflicting and inconsistent verdicts.

{12}    The decision of the Bankruptcy Court in *Vendsouth, Inc. v. Arth* , No. 00-10112C-7G, 2003 WL

22399581 (Bankr. M.D.N.C. Oct. 10, 2003), involved a claim for aiding and abetting breach of fiduciary duty. Judge Stocks relied on the decision in *Blow* exclusively in making his determination that North Carolina would recognize such a claim. Although the underlying rationale for the *Blow* opinion was eliminated by *Central Bank*, the *Blow* decision and Judge Stocks' analysis of it are helpful. Both *Blow* and Judge Stocks' application of it make clear that knowledge of the underlying breach of fiduciary duty (or fraud) by the direct tortfeasor is a prerequisite to liability for aiding and abetting. Moreover, the abettor must provide substantial assistance toward the acknowledged common goal: i.e., help the direct actor accomplish the breach of fiduciary duty (or fraud). The distinguishing factor in breach of fiduciary duty cases is that the abettor may not stand in a fiduciary relationship to the victim. Rather than altering or expanding the well-established definitions of fiduciary relationships, the courts will likely use aiding and abetting breach of fiduciary duty as a better vehicle to accomplish liability for equally culpable acts. That same rationale does not apply to fraud, where the elements of proof are the same for fraud and for aiding and abetting fraud. A claim for aiding and abetting fraud is duplicative and redundant since it requires the same scienter as a fraud claim. In contrast, a claim for aiding and abetting a breach of fiduciary duty may not be redundant if the abettor has no fiduciary relationship with the victim. What is clear from all the cases and the Restatement is that there is not a lower level of culpability or scienter for aiding and abetting than for the underlying tort. In this case, Deloitte could not have a fiduciary relationship with the plaintiff and still aid and abet a breach of fiduciary duty if it knew the fiduciary was breaching a duty and it acted to substantially assist in the breach while knowing that its services were being used for that purpose. Were a jury to find that Deloitte knew that the Fortress Re defendants were defrauding plaintiff and intentionally prepared false financial statements to assist them in doing so, Deloitte would be guilty of fraud and there would be no need for an aiding and abetting claim.

{13} The inclusion of an aiding and abetting fraud claim would thus carry with it inherent confusion for the jury. Why should it be called upon to make the same determination twice? If the elements are no different, the verdict would have to be the same.

{14} For the reasons set forth above, the Court concludes that under the circumstances of this case, the North Carolina courts would not recognize a claim for aiding and abetting fraud. Plaintiff's motion to amend the complaint to add that claim is denied. Except as herein provided, plaintiff's motion for leave to file an amended complaint is granted.

So ordered, this 10th day of June, 2005.

---

[1] Section 876 of the Restatement is entitled "Persons Acting in Concert" and states:
For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
(a) does a tortious act in concert with the other or pursuant to a common design with him, or
(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.
Restatement (Second) of Torts § 876 (1979).